■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTONIO CORCINO, Appellant.—Mikoll, J. Appeal from a judgment of the County Court of Washington County (Berke, J.), rendered April 20, 1990, upon a verdict convicting defendant of the crimes of reckless endangerment in the first degree and criminal mischief in the fourth degree.

The question presented on this appeal is whether County Court improperly refused to charge reckless endangerment in the second degree as a lesser included offense of reckless endangerment in the first degree on the ground that there was no reasonable view of the evidence which would support a finding that defendant committed the lesser offense but not by the same conduct the greater offense. In our view County Court properly refused the request. The judgment of conviction should therefore be affirmed.

Defendant was indicted in two separate counts charging him with the crimes of reckless endangerment in the first degree and criminal mischief in the fourth degree. He was convicted on each count as charged after a jury trial. At the time of the alleged commission of these crimes, June 2, 1989, defendant

had only recently been transferred to Great Meadow Correctional Facility in Washington County. While being housed in a special housing unit (hereinafter SHU), defendant allegedly placed his mattress and other bedding materials on the floor in the front of his cell and ignited them. Heavy smoke resulted covering not only his cell but a large portion of SHU, which is about 240 feet long. Correction officers at the scene fighting the fire testified that the smoke was so thick that they could not see if there was anyone in the 6-foot by 10-foot cell occupied by defendant. At trial defendant admitted that he set the fire and that he could not see out of his cell "because there was a lot of smoke inside the cell where I was". One correction officer testified that he suffered from smoke inhalation caused by the fire and lost two days from work on sick leave. Another correction officer and three inmates were also reportedly treated for smoke inhalation.

The prosecution introduced expert testimony that the fire was life-threatening and that smoke in any fire will kill a person. There was further expert testimony that a correctional facility fire is more dangerous than a residence fire because people are locked in a correctional facility and unable to remove themselves from the danger. One expert testified that there is an even greater chance of death in SHU than in the general prison population as only one inmate is allowed out of his SHU cell at a time for recreation or a shower for security reasons.

In admitting that he set the fire, defendant claimed that he did so to attract the attention of the guards in order to be able to inform authorities that another inmate, whom he knew was a convicted murderer and with whose wife defendant had had an affair, threatened his life. Defendant said that this inmate yelled up to his cell level from a lower level that he would "get" defendant himself or have one of his friends "cut" or "kill" him. Defendant claimed he told one officer and his counselor about the threats but that nothing was done. It was after nothing was done that he started the fire. The counselor defendant referred to testified that on June 2, 1989, after the alleged threats had been made and before the fire, she had visited the cell adjacent to defendant's on two separate occasions but that defendant neither mentioned anything about having enemies nor requested to be put in protective custody. The jury rejected defendant's contention that he acted in self-defense and found defendant guilty on both counts. This appeal ensued.

We agree with County Court's conclusion that on the facts

in this record there is no reasonable view of the evidence which would support a finding that defendant committed the lesser offense but not the greater offense of reckless endangerment in the first degree *(see, People v Glover,* 57 NY2d 61, 63). The People produced compelling evidence that the fire, because of the heavy smoke, created a grave risk of death to inmates locked in their cells and to correction officers responding to the fire. The facility's superintendent testified that: "People don't die in institutions because of fire, they die in institutions because of smoke inhalation * * *. We have, to the best of my knowledge, one other cell fire that someone set in their own cell this year, and that was sometime in late July, early August in which a man set fire to his cell and perished." The fire safety coordinator for the Department of Correctional Services testified that "[t]he products of combustion, carbon monoxide, hydrogen cyanide * * * are killers" and that "[i]n correctional facilities over the past twenty years, the number one cause of death was fires specifically related to cell fires and even broken down further than that, to mattresses that were burning in correctional facilities". He related further that at least 100 people had died over the past 20 years "because of fires in cells and not necessarily the occupants of the cells but in an enclosed area". He was of the opinion that the fire set by defendant endangered the lives of everyone who responded to the fire.

Defendant cites to *People v Canty* (135 AD2d 721), where the defendant was found guilty of reckless endangerment in the second degree after she started her apartment on fire by igniting rubbing alcohol spread around the apartment. Defendant's reliance on *Canty* is misplaced because *Canty* is factually distinguishable, especially inasmuch as there is no indication that smoke or fire spread outside the defendant's own apartment. Here, defendant admitted that the fire he started placed everybody else's life in danger. Just as a bullet intentionally fired from a gun into an occupied building is life-threatening, smoke from a mattress fire intentionally set in an occupied SHU of a correctional facility is also life-threatening. The deadly smoke cannot be separated from this fire. Thus, in the case at bar, on no view of the evidence could the jury find that the fire created a substantial risk of serious physical injury but not a grave risk of death to another person *(see,* Penal Law § 120.25).

Mahoney, P. J., Casey, Levine and Harvey, JJ., concur. Ordered that the judgment is affirmed.